IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent/Plaintiff, | § | |
| | § | |
| V. | § | CR. No. C-06-169 (1) |
| | § | C.A. No. C-8-89 |
| ARACELY VELA, | § | |
| | § | |
| Movant/Defendant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE,
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Aracely Vela's ("Vela") motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255. (D.E. 73.)[1] The Court ordered the government to respond (D.E. 75), and the government filed a response in which it argues that Vela should be denied relief. (D.E. 76, 77.) Although Vela was given the opportunity to file a reply, she has not done so.

As discussed in detail herein, Vela lists three separate claims in her motion. Vela's first and second claims, which arguably fall outside the scope of her waiver of § 2255 rights, fail on their merits. Her third claim is subject to dismissal because she waived her right to file it. Even if it was properly before the Court, moreover, it would fail on its merits. For these reasons, discussed in more detail herein, the Court DENIES her § 2255 motion. Additionally, the Court DENIES Vela a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Dockets entries refer to the criminal case, C-06-cr-169.

1

## II.  FACTS AND PROCEEDINGS

**A.     Summary of the Offense[2]**

The case against Vela involved the controlled buy of 51 kilograms of cocaine in Houston, Texas by Drug Enforcement agents. The primary target was Vela's boyfriend, Walberto Perez. According to DEA agents, Perez was at the center of the conspiracy. Vela's role in the drug trafficking organization was to transport cocaine from Laredo, Texas, to Houston, Texas, and to rent hotel rooms for the drug organization in Houston, Texas when other co-conspirators traveled there. One cooperating co-conspirator, Miguel Sanchez, advised agents that he was instructed by Perez to coordinate the delivery of cocaine and to contact Vela when he arrived in Houston. According to Sanchez, Vela was responsible for driving the cocaine from Laredo, Texas, to Houston and responsible for obtaining the hotel rooms that Sanchez and Vela stayed in while in Houston.

Specifically, Sanchez advised agents that, on May 7, 2005, he had traveled to Houston in Perez's vehicle and that once he arrived, Sanchez contacted Vela and met her at a local Drury Inn hotel. According to Sanchez, Vela was accompanied by her 16-year old son. While at the hotel Sanchez contacted two other individuals to arrange the delivery of the cocaine. Sanchez received from Vela the keys to a white Chevrolet truck, which had the air bag removed to conceal currency and cocaine. As Sanchez left to coordinate the delivery of the cocaine at a local pool hall, Vela suggested that Sanchez take her son with him. Later, at the pool hall, Sanchez and Vela's minor son removed the cocaine from the white truck at a remote location and placed the cocaine in the trunk of another individual's vehicle. They then drove back to the Drury Inn hotel where they stayed the

---

[2] The offense conduct as set forth herein is derived from Paragraphs 4 through 17 of Vela's Presentence Investigation Report ("PSR").

night. According to Sanchez, the next day he drove Perez's Dodge truck back to Laredo, and Vela drove the white Chevrolet truck with her son back to Laredo. Sanchez further debriefed that he participated in drug trafficking transactions on 3 or 4 occasions with Perez and Vela.

Records from the Drury Inn Hotel in Houston, Texas showed that Vela had secured multiple rooms at the hotel on three different occasions in February 2005, two occasions in March 2005, two occasions in April 2005, and on May 7, 2005. At sentencing, defense counsel elicited testimony from Sanchez that Vela and Perez were planning to move to Houston, in an apparent attempt to provide an alternative explanation for the rental of the rooms and for bringing her minor child with her. (D.E. 53, Sentencing Transcript ("S. Tr.") at 17-18.)

**B.    Criminal Proceedings**

On March 8, 2006, Vela was charged in a one-count indictment with conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). (D.E. 10.) On July 3, 2006, she pleaded guilty pursuant to a written plea agreement with the government. (D.E. 28, 30.) The plea agreement provided that, in exchange for her guilty plea and her waiver of appellate and § 2255 rights (discussed below), the government would recommend that she receive a three-level credit for acceptance of responsibility, recommend a sentence at the lowest end of the applicable guideline range, and recommend that she be given a two-level decrease for a "minor role" pursuant to U.S.S.G. § 3B1.2(b). (D.E. 30 at ¶ 2.) The plea agreement contained a voluntary waiver of Vela's right to appeal and to file a § 2255 motion:

> The Defendant waives his/her right to appeal both the conviction and the sentence imposed. The Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the

>United States, as set forth in Title 18, United States Code, Section 3742(b). Additionally, the defendant is aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. **The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.**

(D.E. 30 at ¶ 7) (emphasis in original). The agreement was signed by both Vela and her counsel. (D.E. 30 at 5.)

At her rearraignment, the Court specifically questioned Vela under oath to ensure that her plea was voluntary and knowing and to ensure that she understood and was voluntarily relinquishing her appeal rights and, in particular, her right to file a § 2255 motion:

>THE COURT: ... You're giving up another right under this plea agreement that's independent of your right to appeal, and that's a right to file a motion for post-conviction remedy in which you could attempt to set aside either your sentence and/or your conviction by challenging such matters as ineffective assistance of counsel, jurisdiction, or constitutionality, to name a few. If you go forward today, you give up that right forever as to this case. Do you understand that?
>
>THE DEFENDANT: Yes.

(D.E. 51, Rearraignment Transcript ("R. Tr.") at 14-15.) It is clear from the foregoing that Vela's waiver was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

Additionally, Assistant United States Attorney Gonzalez made reference to the waiver of § 2255 rights in his summary of the plea agreement. (R. Tr. at 16.) After hearing that summary, Vela testified that the summarized agreement was her entire plea agreement, that she understood it and that it was correct. (R. Tr. at 16.) Vela also testified that no one had made her any other promises or agreements other than what was contained in the written agreement, and specifically

that no one had promised her leniency, a motion for downward departure or safety valve. (R. Tr. at 16-17.)

The Court showed her the plea agreement, and Vela identified it as her plea agreement, and told the Court it was her signature on the last page. (R. Tr. at 17.) Vela testified that she had discussed it completely with her attorney before she signed it. (R. Tr. at 17.) Vela further testified that no one had forced her to plead guilty and that her decision to plead guilty was entirely voluntary. (R. Tr. at 22-23.)

The Court inquired as to whether Vela had discussed with her attorney how the Sentencing Guidelines might apply in her case, and Vela said that she had. (R. Tr. at 19-22.) She also told the Court that she understood her attorney's opinion of the guidelines was not necessarily the same as the Court's. (R. Tr at 21-22.) The following exchange occurred:

> THE COURT: Do you understand that your attorney's opinion of the guidelines is not necessarily that of mine, that I'm not going to be able to determine what your sentence is going to be till after the Presentence Report has been completed and that you and the Government have had an opportunity to challenge the facts reported by the Probation Office; that after it's been determined what advisory guidelines do apply in the case, I have the authority to impose a sentence that is higher than or lower than those guidelines; that even though you've given up your right to appeal, the U.S. Attorney has kept his right to appeal? Do you understand these matters?
>
> THE DEFENDANT: Yes. The only thing that I want to say is that my son, I didn't –
>
> (Defendant and Counsel conferring off the record.)
>
> MR. JENKINS: Your Honor, I'm going to advise her not to discuss that. That's going to be an issue at sentencing, and I don't think – well not, I don't think the Government's going to allege it as part of its factual basis for purposes of this hearing, and we're not going to agree to it for purposes of this hearing.

>THE COURT:  They already said they're not going to prove that up.
>
>MR. JENKINS:  I'm sorry?
>
>THE COURT:  They've already said that they're not going to prove – oh, yeah.  I'm sorry.  That it would be an issue for sentencing.
>
>MR. JENKINS:  It will be an issue, but we're not admitting to it, and I'm –
>
>THE COURT:  That's fine.
>
>MR. JENKINS:  – advising her not to discuss it.
>
>THE COURT:  It's a good idea to take your attorney's advice.  But did you understand what I've told you so far?
>
>THE DEFENDANT:  Yes.

(R. Tr. at 21-22.)

After accepting Vela's guilty plea, the Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR").  The PSR calculated Vela's base offense level as a 33, gave her a two-level adjustment for being a minor participant in the offense and gave her a three-level adjustment for acceptance of responsibility.  (PSR at ¶¶ 24-30.)  The total resulting offense level was 28.  (PSR at ¶ 30-32.)  The PSR did not include any increase in her offense level as a result of using a minor in the commission of the offense.

Sentencing occurred on September 26, 2006. (D.E. 38; see also generally S. Tr.)  At sentencing, the Court heard Sanchez's testimony, put on by the government, regarding the involvement of Vela's minor son.  Vela's counsel was also able to cross-examine Sanchez.  Vela's attorney explained that her position was that she did not tell Sanchez to take her son with him, but she did not testify.  (S. Tr .at 20-22.)  At the conclusion of the testimony, the Court concluded that Vela used her son in the commission of the offense.  (S. Tr. at 22-23.)

The following discussion then took place.

>THE COURT: Okay. Now, what are you recommending?
>
>[AUSA] GONZALEZ: Well, Your Honor, the Government had –
>
>THE COURT: I'm not going to give her safety valve, if that's what you're recommending.
>
>MR. GONZALEZ: Well –
>
>MR. JENKINS: Well, Your Honor, now I do have an –
>
>THE COURT: Just a moment. I'm talking to Mr. Gonzalez.
>
>MR. GONZALEZ: This has been the problem, Your Honor, and I've discussed this with Mr. Jenkins, is this one issue. She has attempted to help us locate the fugitive. She has told us other things. But we just have a hard time on this one issue, accepting the fact that she did not know her son, based on everything that we know about this case, based on the fact that she has another son who's in custody on a drug-related case, she didn't know that this son was at least present during the commission of this offense. And –
>
>THE COURT: And hauled out the cocaine.
>
>MR. GONZALEZ: That's right, Your Honor. And so the dilemma here is that, as much as we wanted to help her, given the fact that she has at least sat down with us and talked to us, we can't agree with her on that issue. I cannot – I don't believe that she didn't know her son was present and was instructed to go with the co-defendant.
>
>THE COURT: So, you're not recommending the safety valve.
>
>MR. GONZALEZ: I can't at this point, Your Honor.
>
>THE COURT: Mr. Jenkins?
>
>MR. JENKINS: Well, Your Honor, I think – I just think that's wrong, you know. But that's – if people are happy with that, then I guess that's the way it's going to be. But I disagree with it.
>
>THE COURT: Pardon?

7

> MR. JENKINS: I think she gave them the information she had. I think she was truthful with them. I think basically what you have here is two people saying opposite things.
>
> THE COURT: Okay. Now we're in another thing. We're talking about safely valve.
>
> MR. JENKINS: Right.
>
> THE COURT: I can't determine – you know, if she wants to tell me what she knows, and I determine her credibility based on – I mean, I don't understand what you're asking me to do.
>
> MR. JENKINS: Well, the Government last week was recommending safety valve. They found her debriefing credible. And now they're saying they don't believe it just because she and this gentleman have a dispute about what happened.
>
> THE COURT: Well, what I understand is that she's not credible on that issue. I didn't find her credible on that issue either.
>
> MR. JENKINS: Well, the Government found her credible last week.
>
> THE COURT: Well, this part of the Government doesn't. But if you want me to consider this evidence independent of their recommendation, I can do that.

(S. Tr. at 23-26.) There was then a discussion about whether Vela would testify. Counsel conferred with Vela, and then informed the Court that she did not wish to testify.

The Court ultimately found that Vela was not entitled to safety valve relief. With the increased offense level for use of the minor, the total guideline range was 120 to 121 months, and the Court sentenced Vela to 120 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term. (S. Tr. at 27, 28.) Judgment of conviction and sentence was entered on October 2, 2006. (D.E. 42.)

Vela timely appealed. On appeal, Vela argued that the appellate waiver provision in her plea agreement should not be enforced because: (1) her conviction should be reversed; (2) her guilty plea

8

was not knowing and voluntary; (3) the Government breached the agreement; (4) she was denied effective assistance of counsel; and (5) an exception to the waiver applies. (D.E. 68 at 2.) In a *per curiam* opinion issued September 27, 2007, the Fifth Circuit rejected her arguments, concluding that her appeal waiver was knowing and voluntary and barred review of the sentencing issues she raised on appeal. (D.E. 68 at 3.) In so doing, the Fifth Circuit ruled that "the record shows that Vela was not denied her choice of counsel and was not coerced into pleading guilty," that she had "not shown that the district court's actions affected the validity of her guilty plea," and that she had not carried her burden of showing that the Government breached the plea agreement. (D.E. 68 at 2.) The appellate court expressly declined to rule on Vela's ineffective assistance of counsel claims, however, finding that the record was not sufficiently developed as to those claims. (D.E. 68 at 2-3.)

Vela's § 2255 motion was received by the Clerk on March 21, 2008. (D.E. 73.) The motion is timely.

### III. MOVANT'S ALLEGATIONS

In her motion, Vela raises three grounds for relief. First, she argues that her plea of guilty was not make knowingly and voluntarily. In support of this claim, she contends that she pleaded guilty because "it was explained to me that I would receive a sentence of 12 to 18 months" and that it "was not made clear to me that the judge had the ability to add to the sentence offered to me and enforce the maximum sentence of 120 months." (D.E. 73 at 5.)

Second, she claims that she was denied the effective assistance of counsel because her appointed counsel, Assistant Federal Public Defender Christopher Jenkins, only "rarely" visited her, did not explain her case to her, "constantly" asked her to plead guilty and promised her that she would only be sentenced to 12 to 18 months. (D.E. 73 at 6.) She also avers that Mr. Jenkins told

9

her not to speak with the judge because he said it would only make the Court angry. Third, she argues that she should not have been given an adjustment for use of a minor in the commission of the offense.[3]

For the reasons set forth herein, Vela's claims all fail.

## IV.  DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct her sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.     Vela's Waiver of § 2255 Rights**

As discussed infra at Section IV.D., Vela's third claim is not properly before the Court because it falls within the scope of her § 2255 waiver. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights). That is, her claim that the Court erred in increasing her offense level for use of a minor, or that she was

---

[3] Vela titles her third ground as "denial of right to appeal," but offers supporting facts that make clear she is challenging the Court's decision at sentencing regarding her use of a minor.

somehow improperly denied her right to appeal that issue, is not a claim that directly affects the validity of her plea or waiver. Thus, it falls within the scope of her waiver and is barred. See infra Section IV.D. Even if it were properly before the Court, moreover, this claim fails on its merits. See infra Section IV.E.

Vela's first and second claims, however, allege that her guilty plea was unknowing and involuntary because her counsel misled her about the consequences of her plea and, specifically, promised her a sentence of 12 to 18 months. These claims directly challenge the validity of her plea and consequently her waiver. See White, 307 F.3d at 343-44. Thus, the Court turns to the merits of these claims.

### C. Alleged Ineffective Assistance of Counsel As to Plea

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that her counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal

to an ineffective assistance claim."). When viewing the record as a whole, it is clear that Vela cannot show prejudice and thus is not entitled to relief as to her claim.

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Vela must show that, absent her counsel's deficiencies, she would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). This is a showing that cannot be met here.

Notably, Vela does not allege in her motion or supporting memorandum that she would have proceeded to trial had her counsel not been ineffective. Moreover, the rearraignment transcript clearly establishes that Vela's decision to plead guilty was her own and that it was entirely voluntary. (See supra at pages 3-6 (setting forth pertinent parts of plea colloquy).) Significantly, Vela was specifically advised by the Court at her rearraignment that the government believed she might have used a minor in the commission of the offense. (R. Tr. at 20.) The Court asked if she understood that she could be assessed an extra two-level increase for the use of a juvenile, if it's found at sentencing to apply, and Vela told the Court she understood. (R. Tr. at 20; cf. R. Tr. at 21-22 (Vela beginning to dispute the fact that she used her son, and defense counsel indicating that it would be an issue for sentencing.) Additionally, the Court informed Vela that she faced a mandatory minimum of ten years, but could be sentenced to life imprisonment. Vela testified that she understood. (R. Tr. at 18-19.)

Thus, her belated claim that her plea was somehow involuntary because her counsel did not advise her of the consequences of her plea is flatly contradicted by the record. Vela's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Vela's sworn statements at the rearraignment show that she fully understood the rights she was giving up under the plea agreement, and that no one was forcing her to plead guilty. See Wilkes, 20 F.3d at 653. They also clearly show that she was aware that she could be sentenced to an increased sentence based on the use of a juvenile, and that she knew the mandatory minimum sentence was 120 months, the exact sentence she received. Her statements were also clear that no one had promised her she would receive safety valve relief or a downward departure motion for substantial assistance.

Additionally, Vela is permitted to proceed on her claim that her counsel promised her a sentence of 12 to 18 months only under narrow circumstances, not present here. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with her representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110. A defendant is entitled to an evidentiary hearing on the issue if she can produce evidence showing the merit of her allegations, typically in the form of an affidavit from a reliable third party. Id. Vela has not alleged any facts about the identity of any witnesses to the alleged promise by Mr. Jenkins,

and has not provided any evidence showing the merit of her allegations. Thus, she would be unable to obtain relief under the Cervantes exception.

In short, Vela cannot overcome her testimony at the rearraignment – which clearly established a knowing and voluntary plea – to now show that she would have insisted on going to trial but for counsel's performance. Thus, Vela cannot prove the prejudice prong of the Strickland inquiry, and it is unnecessary to determine whether her counsel's performance was deficient.[4] Her related claims that she received ineffective assistance and that her guilty plea was unknowing or involuntary fail.

Because the Court concludes that Vela's challenges to the validity of her plea agreement fail, the Court finds that her plea agreement and her waiver of § 2255 rights contained therein are valid and enforceable. Accordingly, the Court turns to the effect of her waiver of § 2255 rights on her remaining claims.

## D. Waiver of § 2255 Rights

As noted, it is clear from the rearraignment that Vela understood that she was waiving her right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for her waiver to be enforceable. See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Vela's statements

---

[4] The Court notes, however, that Jenkins' affidavit flatly denies promising Vela any particular sentence. Regarding this issue, he describes conversations with Vela that took place before her plea in which he reviewed the sentencing guidelines with her: "I told Ms. Vela that the case carried a mandatory minimum of 10 years in prison. I also explained that there were ways available to her to reduce her sentence below ten years, specifically under "safety valve." I calculated the lowest guideline range that I believed she would reach, given safety valve and the minor role reduction, and I believe that the range would have been 63-78 months. ... At no time did I or anyone in my presence suggest to Ms. Vela that her sentence would be as low as 12-18 months; even if I had made a prediction about a reduction for substantial assistance, I never would have estimated such a low sentence for a case involving 50 kilograms of cocaine." (D.E. 76, Jenkins Affidavit at ¶13.)

under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that her waiver was knowing and voluntary. Her third claim, challenging the Court's conclusion at sentencing that she utilized a minor in the commission of the offense, clearly falls within the scope of that waiver.

Moreover, even if her third claim were properly before the Court, it would not entitle Vela to relief.

### E.     Ineffective Assistance of Counsel For Failing to Raise a Miranda Challenge

Vela's third ground for relief, even if it were not barred by her waiver, would fail on its merits for several reasons. First, the issue was raised by Vela on appeal and resolved against her. That is, the Fifth Circuit clearly held that Vela's appeal-waiver provision was enforceable and barred consideration of her challenge to the Court's sentencing decisions, including the Court's conclusion that her offense level should be increased for use of a minor. (D.E. 68) It has long been "settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) (affirming district court's refusal to entertain the defendant's § 2255 motion).

Additionally, Vela's challenge to the Court's increase for use of a minor, by itself, would not change her guideline range even if that challenge were successful. That is, the Court denied Vela safety valve relief, finding that she had not truthfully debriefed due to her failure to admit certain facts regarding her son's use in the offense. Because Vela was not entitled to safety valve relief, the mandatory minimum sentence of 120 months – the sentence Vela received – would still have applied. Accordingly, even if the Court has not assessed the two-level increase for use of a minor, her sentence would not have been different. Accordingly, this claim does not entitle her to relief.

In sum, while Vela's claims that her plea was unknowing and involuntary and her ineffective assistance claim as to her plea are denied on their merits, her remaining allegation concerning the enhancement for use of a minor is barred by her waiver and also fails on its merits. For these reasons, Vela's § 2255 motion is DENIED in its entirety.

**F.    Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Vela has not yet filed a notice of appeal, this Court nonetheless addresses whether she would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.

United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Vela is not entitled to a COA as to any of her claims. That is, reasonable jurists could not debate the Court's resolution of her challenges to her plea. Similarly, jurists of reason would not find it debatable that her valid and knowing waiver precludes consideration of her remaining claim, or that it fails on its merits.

## V. CONCLUSION

For the above-stated reasons, Vela's motion under 28 U.S.C. § 2255 (D.E. 73) is DENIED WITH PREJUDICE. The Court also DENIES her a Certificate of Appealability.

ORDERED this 3rd day of October, 2008.

_____
Janis Graham Jack
United States District Judge

17